**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | )   **CRIMINAL ACTION** |
| | )   **NO. 10-1732-TSH** |
| JOSE L. BAEZ, | ) |
| Defendant | ) |
| | ) |

**MEMORANDUM AND ORDER ON PROBABLE CAUSE AND THE**
**GOVERNMENT'S MOTION FOR DETENTION**
**August 16, 2010**

**HILLMAN, M.J.**

### Nature Of The Offense; The Government's Motion

On August 9, 2010, a Criminal Complaint issued, charging the Defendant, Jose L. Baez,

with Arson, in violation of 18 U.S.C. §844(i).  At the Defendant's initial appearance on August

9, 2010, he was advised of his right to a preliminary examination pursuant to Fed. R. Crim. P.

5.1 and the Government moved for a detention hearing pursuant to 18 U.S.C . §§ 3142(f)(1)(A)[1]

(Defendant is charged with a crime of violence), (f)(2)(A)(he is a risk of flight) and

(f)(2)(B)(Defendant is a serious risk to obstruct justice by threatening or intimidating potential

witnesses/victims)

---

[1] The Government has moved to detain the Defendant on dangerousness grounds pursuant to 18 U.S.C. §3142(f)(1)(A).  Under the Bail Reform Act, Arson has been defined to be a crime of violence. *See* 18 U.S.C. § 3156(a)(4); *United State v. Mitchell,* 23 F.3d  1, 2 n. 3 (1st Cir. 1994).

A probable cause/detention hearing was held in this case on August 10, 2010. Brian Oppedisano, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), testified on behalf of the Government.

At the conclusion of the hearing, I informed the parties that I found probable cause for the offense charged against Baez in the Complaint.  I took the matter of detention under advisement.

## Findings Of Fact[2]

In or about August 2009, ATF had placed a Global Positioning System ("GPS") on Baez's Chevrolet Caprice.  The GPS had been placed on Baez's Caprice because a dark mid- to- late 80's model Caprice had been spotted on surveillance tapes in the area of two arson fires, at or about the time that the fires were reported.  ATF ran a Registry of Motor Vehicle check for Chevrolet Caprices of the suspected model and color range owned in Boston and immediately surrounding communities.  Thirty-Eight vehicles were identified.  ATF and/or Boston Fire Department investigators have looked at all 38 vehicles and Baez's is the only vehicle which matches the Caprice seen on the surveillance tapes, including with respect to color, silver trim, a light custom steering wheel, lack of bumper stickers, and lack/presence of window decals.

## August 9, 2010 Fire

On August 9, 2010, at 3:21 a.m., Special Agent Oppedisano was alerted via a text message that Baez's Caprice was leaving the area of his residence on Columbia, Avenue in Dorchester.  The GPS indicated that the Caprice had stopped on Bexley Road in Roslindale.  The

---

[2]The following facts are found based on Special Agent Oppedisano's testimony and the affidavit attached to the Complaint, of which I have taken judicial notice.

Caprice remained stationary for about 17 minutes.  Other law enforcement were notified of the Caprice's whereabouts and were directed to the area where it was parked.

While Detective James Freeman was proceeding to the area, he received a transmission that a fire had been reported at 11 Firth Road, which is parallel to Bexley Road and is a short distance (approximately 100 yards) from where Baez's Caprice was parked.  Detective Freeman diverted to the area of Baez's residence.  Detective Freeman observed the Caprice stopped at a red light; the Caprice thereafter made a U-turn and parked near Baez's residence.  Detective Freeman then approached the vehicle and identified himself to Baez.  He told Baez that he investigating a call about a fight in the Dudley Street area.  Baez told Detective Freeman that he was coming from a Dunkin Donuts in Jamaica Plain.  Detective Freeman asked Baez to exit his vehicle, and when he did so, Detective Freeman smelled a strong odor of gasoline.  Baez was arrested and advised of his *Miranda* rights. Upon being interviewed, Baez gave his address and stated that he had owned the Caprice for the past eight to ten years.

A small box of wooden matches was seized from his right front pant's pocket.  Baez said he had the matches because he smoked.  However, law enforcement agents did not find any evidence that Baez smoked either in his home or vehicle.  Three one gallon Poland Spring water jugs were found in the trunk of the Caprice: two were filled with a substance that smelled like gasoline and one was about half full of a substance which smelled like gasoline.  In addition, a 5-6 gallon gasoline container was found in the trunk.  A canine trained to detect accelerants alerted positively to the front seat area of the Caprice.

Eleven Firth Street, the scene of the fire, is a two and one-half story wooden structure.  All three stories of the structure are occupied.  At the time of the fire, twelve people were in the

building, including a handicapped individual in a wheel chair.  One resident was injured when he jumped from the second story to escape the fire.  Additionally, two firefighters were injured fighting the fire.  All of the injured individuals went to the hospital and were released.  Fire investigators have ruled the fire an arson because of the presence of an accelerant in the front porch area. Approximately $100,000 of damage was done to the residence and at present, it is not habitable.  Three persons who lived at the house were shown a photo array and have identified Baez as someone they have had prior contact with; they indicated that they had previously placed bets with him, but had not done so in about a year.

## <u>Prior Fires</u>

### *April 29, 2009*

On April 29, 2010, at approximately 3:52 a.m., the Boston Fire Department ("BFD") responded to  a fire at Jamaica Plain Auto Body, in Jamaica Plain.  Remnants of numerous burnt tires and clothing were found at the scene, in front of the business's three garage bay doors.  The BFD conducted a cause and origin assessment and determined the fire was arson.  A surveillance camera on a nearby business showed a dark toned Chevrolet Caprice approaching the area of the body shop just prior to the fire starting.  The taillights of an unidentified vehicle can be seen leaving the area before the BFD apparatus arrived on the scene.  The Caprice on the video appears identical to the one driven by Baez.   More specifically, as mentioned above, Baez's Caprice is the only one of 38 Caprices registered in the Boston area which has all of the characteristics of the Chevrolet Caprice on the videotape.

Special Agent Oppedisano and a BFD investigator went through the auto body shop's business records and found that on October 3, 2008, a Jose Baez had work done there on a 2005

Toyota Corolla.  The owner/operator of the auto body shop, Matthew Hayes, recalled that he

there had been a customer named Jose Baez that had not been satisfied with work done at the

shop, but it was not the Jose Baez who had brought in the Toyota.  Rather, in early to mid-

summer 2008, Baez (the Defendant) had brought a black colored, older model, box style car,

which he thought was a Chevrolet Impala, to have some work done on it.  Baez's car had a leak

in the trunk.  The auto body shop repaired body rot in the upper right trunk area and the right

rear wheel house area for about $200.  About two weeks after the repairs were done, Baez

returned complaining that there was still a leak in the trunk.  Hayes looked at the car and

determined that there were additional leaks around the wear window and vinyl roof.  Hayes

informed Baez that he would need to bring the car to a shop that specialized in vinyl roof repairs.

Baez demanded his $200 back and Hayes refused.  Baez became visibly upset and repeatedly

asked for his money back. Baez threatened to take the business to court.  About three to four

months later, Baez did, in fact, sue the auto body shop in small claims court.  On September 18,

2008, the Roxbury District Court entered judgment in favor of the auto body shop.

*July 31, 2009 Fire*

On July 31, 2009, at about 3:58 a.m., the BFD responded to a fire at a brownstone

condominium complex at 21 Bay State Road, in the Kenmore Square area of Boston.  Bay State

Dental Care had an office in the building.  The fire originated in the outside vestibule area.

Remnants of burnt tires and burnt clothing were discovered at the scene; there was also an odor

gasoline.  The BFD conducted a cause and origin investigation and determined that the fire was

arson.  Approximately $1,500,000 in damages was caused to the building.

A review of surveillance cameras from the surrounding area revealed that just prior to the fire being reported, a Chevrolet Caprice traveled down the back alley behind the building. Another surveillance camera captured the same vehicle traveling away from the building. An eyewitness observed an approximately six foot tall Caucasian male in his early to mid-thirties running away from the building and entering a dark colored, mid-size sedan before departing the area at a high rate of speed. The Chevrolet Caprice in the video tapes is identical to Baez's.

Special Agent Oppedisano obtained Back Bay Dental Care's patient list, reviewed it with the Office Manager and determined that Baez was a client. The office manager remembered Baez because he had been dissatisfied about being charged for having his veneers re-cemented. At the time the original re-cementing was done on September 25, 2008, it was explained to Baez that it was only a temporary fix and that he would eventually need to replace the veneers. On June 6, 2009, Baez returned to the practice because his veneers need to be re-cemented again. When the work was completed, Baez was told that he would have to pay for the second re-cementing because Back Bay Dental Care had not done the original dental work. Baez became angry and argumentative because he was being charged for the second re-cementing; he repeatedly insisted that he would not pay. Ultimately, he paid $138 before leaving on June 6, 2009.

## **Probable Cause**

From the evidence presented, I find that there is probable cause for the offense charged against Baez in the Complaint.

## Discussion of the Bail Reform Act

In order to detain a person pending trial under 18 U.S.C. § 3142 (The Bail Reform Act), the judicial officer must find by (1) clear and convincing evidence, that the defendant is a danger to the community, or (2) a preponderance of the evidence, that the defendant poses a risk of flight. *See* 18 U.S.C. § 3142 (f); *United States v. Jackson*, 823 F.2d 4-5 (2d Cir. 1987); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562 (1986). *See also United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991). The judicial officer may then detain a person pending trial only if, the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

    (1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (2)    the weight of the evidence against the person;

    (3)    the history and characteristics of the person, including:

        1.    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

2.      whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4)      the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. §3142(g).   The judicial officer "may not impose  financial condition that results in the pretrial detention of the person".  18 U.S.C. § 3142(c).

## Discussion of Whether Detention is Warranted

### A. Defendant's History and Characteristics

Baez, age 38, was born in the Dominican Republic and came to the United States when he was about 16.   He is a naturalized United States citizen.  Baez has no children and has never married.  Baez's mother and father reside in Jamaica Plain, MA, in separate residences.  He has two sisters residing in Hyde Park, MA, a brother residing in Lowell, MA and another brother residing in West Roxbury, MA.  He also has four half-siblings and numerous aunts, uncles and cousins who reside in the Dominican Republic.  Baez recently traveled to the Dominican Republic to visit his family.

Baez has lived in on Columbia Avenue in Dorchester, MA for the past 12 years.  Prior to that he lived with his mother and siblings in Hyde Park, MA.

Baez completed high school through the eleventh grade.  For the past seven months, he has been employed at a clothing chain store.  For the 13 months prior to that, he worked as a cashier at a grocery store chain.  For 13 years prior to that, he was a cashier at another grocery store chain.

Baez has a minimal prior criminal record.  A charge of driving with a suspended/revoked license was continued without a finding and he was convicted of a compulsory insurance violation, for which he paid a fine.  Both of these cases are from the early/mid 1990s.  Baez does have 4 arrests on his record dating from 1989-1995 (all for motor vehicle type offenses), which are notable only because in two of those cases, he was defaulted and warrants were issued.  All of the defaults were subsequently removed.

<u>Nature of the Offense; Weight of the Evidence; Whether Detention Is Warranted</u>

### 1.  <u>Nature of the Offense</u>

Baez is facing a serious charge for which if he is convicted, calls for a mandatory minimum of 5 years and a maximum of 20 years.   If it is found that anyone was injured as the result of the arson, he would be facing a mandatory minimum of 7 years and a maximum of  40 years.

### 2.  <u>Weight of the Evidence</u>

Baez has only been charged with the August 9, 2010 fire and with respect to that incident, the evidence, although circumstantial, is strong.

### 3.  <u>Whether Detention Is Warranted</u>

#### a.  <u>Whether Defendant Poses A Danger To The Community</u>

 Generally, this Court gives little weight to the charged criminal conduct in assessing whether a defendant is a danger to the community.  However, the circumstances of the charge in this case cannot be ignored.  Baez is charged with setting fire to a residential building during the early morning hours when twelve individuals were at home.  One of those individuals was in a wheelchair.  Three persons were hurt: two firefighters who were fighting the fire and one

resident who was trying to escape the fire.  Three people who resided at the residence had a prior

relationship with Baez.  Furthermore, while the evidence as to other fires is slim, Baez's car was

spotted in the area at or around the time when two fires determined to be arson were set.  Given

that the fires occurred  at businesses where Baez had been a dissatisfied customer, it strains

credibility to suggest that his being in the area was a mere coincidence. Furthermore, I agree

with the Government that given Baez's apparent predisposition to seek revenge against

individuals/businesses with which he has a grievance, Baez is a serious risk to threaten potential

witnesses/victims in this case.

Given the totality of these circumstances, I find by clear and convincing evidence that

Baez is a danger to the community and that there are no conditions or combination of conditions

that I can impose that would protect the safety of any person in the community if he were

released.

### b. Whether Defendant Poses A Risk Of  Flight

Baez is a naturalized United States citizen who has lived in this country for about 22

years.  Most of his immediate family lives in the area, but he does have significant family ties to

the Dominican Republic.  Baez has few assets and while steadily employed, his income is

minimal.  He has never been incarcerated and faces a mandatory minimum of at least 5 years and

possibly 7 years if convicted of the offense charged.   I have found that the evidence against him

is strong.

Although counsel for Baez suggested that it may be possible for his family to post

security for his release, to date, no amount has been proposed.  It also remains an open question

whether there is anyone to serve as a third-party custodian for Baez. Considering the totality of

these circumstance, while it is a close call, I find by a preponderance of the evidence that Baez

poses a risk of flight and therefore, he should be detained on this ground.

### Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.  That Jose L. Baez be committed to the custody of the Attorney General, or his

designated representative for confinement in a corrections facility separate, to the extent

practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.  That Jose L. Baez be afforded a reasonable opportunity for private consultation with

counsel; and

3.  On order of a Court of the United States or on request by an attorney for the

Government, the person in charge of the corrections facility in which Jose L. Baez is detained

and confined shall deliver him to an authorized Deputy United States Marshal for the purpose of

any appearance in connection with any court proceeding.

### RIGHT OF APPEAL

THE PERSON OR PERSONS DETAILED BY THIS ORDER MAY FILE A MOTION

FOR REVOCATION OF AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. §

3145(b).

 /s/ **Timothy S. Hillman**
TIMOTHY S. HILLMAN
MAGISTRATE JUDGE