UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No:  10CR10275DPW |
| | ) | |
| JOSE BAEZ | ) | |
| | ) | |

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

REQUEST FOR ORAL ARGUMENT

FACTS AND PROCEDURAL HISTORY

Now comes the Defendant, Jose Baez, pursuant to Rules
12(b)(3)(C), 41(h), and 47 of the Federal Rules of Criminal
Procedure, and respectfully submits that Bureau of Alcohol,
Tobacco, Firearms, and Explosives ("ATF") Agent Brian Oppedisano
subjected him to an illegal, warrantless search through covertly
installing a Global Positioning Satellite, ("GPS"), onto the
undercarriage of two vehicles, which belonged to him.

On August 27, 2009, at 3:43 a.m., Agent Oppedisano
installed a GPS device on the Defendant's 1989 Chevrolet Caprice
("Caprice").  At the time, the Caprice was parked in the area of
150 Columbia Road, Dorchester, Massachusetts.

On or about January 8, 2010, ATF agents installed a GPS
device onto the undercarriage of Baez' Honda Accord.

ATF agents installed both GPS devices without a warrant or
any prior judicial approval.

The GPS devices recorded each and every movement of these vehicles twenty-four hours per day for three hundred and forty seven (347) days.

On August 9, 2010, a text message from the GPS device, which Agent Oppedisano covertly installed onto the Defendant's Chevrolet Caprice, alerted Agent Oppedisano that the Caprice had left the Columbia Road, Dorchester, Massachusetts residence. Agent Oppedisano logged onto an internet application that tracked the Defendant's whereabouts.  The GPS device transmitted the Defendant's movements to 5 Bexley Road, Roslindale, Massachusetts.  Baez' Caprice was stationary at that address from 3:27 to 3:44 a.m.

While en route to Bexley Road, Agent Oppedisano received a dispatch that a residence located at 11 Firth Road was on fire.

 Bexley Road runs parallel to Firth Road.  Agent Oppedisano dispatched Boston Police to the Defendant's residence at Columbia Road, Dorchester, Massachusetts.

Boston Police Detective James Freeman observed the Defendant return to 140 Columbia Road, Dorchester, Massachusetts in the Caprice.  He engaged the Defendant in conversation.  He smelled gasoline on the Defendant.  He placed the Defendant under arrest.  He found matches on the Defendant.  He seized the Defendant's clothes.

During an audio-recorded interview, the Defendant claimed
that he smoked cigarettes to explain the presence of matches.[1]
The Defendant admitted that he had owned the Caprice for eight
to ten years.

On August 9, 2010, police executed a search warrant upon
the Defendant's Chevy Caprice.  They located gas cans, traces of
accelerant, and other evidence linking the Defendant to arson in
the vehicle.

On August 9, 2010, police also executed a search warrant at
the Defendant's residence.  Pursuant to this warrant, police
found matches in a towel, computers, notebooks, maps, and an
index card linking him to the Fresh Pond, Cambridge Whole Foods
market.  The United States Attorney's Office subsequently
indicted the Defendant for an incendiary fire of the Whole Foods
market that occurred on December 26, 2008.

Additionally, police located a small claims trial notice
referencing a dispute with JP Autobody in Jamaica Plain,
Massachusetts.  The United States Attorney's Office later
charged the Defendant for an incendiary fire at JP Autobody
which occurred on April 29, 2009.

---

[1]  In all subsequent searches, police were careful to note they found no
materials associated with the Defendant smoking cigarettes.

On August 9, 2010, the United States Attorney's Office filed a complaint against the Defendant charging him with the Firth Street fire.

On August 13, 2010, police executed a search warrant at a garage which the Defendant rented at 21 Ivory Street, West Roxbury, Massachusetts.  Police found tires, plastic bottles, and other materials consistent with arson.  They also located a Whole Foods apron in the garage.  Additionally, police seized a car repair invoice further linking the Defendant to the JP Autobody fire.

On September 16, 2010, police conducted a "consent" search at another garage rented by the Defendant at Iffley Road in Jamaica Plain.  They located gas cans and tires in the garage. Police judged these items to be consistent with the referenced incendiary fires.

On or about November 10, 2010, the United States Attorney's Office filed a superseding indictment against the Defendant charging him with the August 9, 2010 Firth Road fire as well as the December 26, 2008 Whole Foods fire, the April 29, 2009 JP Autobody fire, and a July 31, 2009 fire at Back Bay Dental in Boston, Massachusetts.

## ARGUMENT

The installation and use of the GPS monitoring device in this matter violated the Fourth Amendment in two ways.

First, ATF agents monitoring the Defendant's movements twenty-four hours a day for almost a year, absent probable cause and a warrant, constituted an unreasonable search in violation of the Fourth Amendment.

Second, installation of the GPS device on the Defendant's vehicle absent a judicial determination of probable cause constituted an unreasonable seizure.

1.   Warrantless GPS Monitoring

In United States v. Knotts, 460 U.S. 276, (1983), the Supreme Court ruled that the use of a "beeper" device on a vehicle did not violate the Fourth Amendment.  In Knotts, police utilized a beeper to assist them in visual surveillance of a vehicle.  Without visual surveillance, the beeper was useless. In that context, the Court in Knotts ruled that police were not required to obtain a warrant because the beeper merely aided the police in their surveillance of the defendant along public ways. See also United States v. Karo, 468 U.S. 705 (1984).

The technological landscape since Knotts has changed dramatically.  By employing GPS technology, police are now able to attach a device to a vehicle which allows them to passively and automatically monitor and record each and every movement of a vehicle, continuously and indefinitely, twenty-four hours a day, seven days a week.

The emergence of this technology has divided the various states and federal courts on the search and seizure implications of this continuous, covert surveillance technology.

Some courts have relied upon Knotts to uphold the constitutionality of GPS monitoring. See, e.g., United States v. Marquez, 605 F.3d 604 (8th Cir. 2010); United States v. Pineda-Moreno, 591 F.3d 1212 (9th Cir. 2010); United States v. Garcia, 474 F.3d 994 (7th Cir. 2007).  These courts have reasoned that because a person has no reasonable expectation of privacy "in his movements from one place to another," the warrantless use of a GPS device does not offend the Fourth Amendment.

But reliance on Knotts ignores the vast and disturbing difference in intrusiveness between the crude beeper device of three decades past and the military satellite based technology attendant to GPS devices.

Indeed, Knotts specifically reserved for the possibility of future scenarios that could involve "twenty-four hour surveillance." Knotts at 283-284.

The defendant in Knotts warned that "twenty-four hour surveillance of any citizen of this country will be possible, without judicial knowledge or supervision." Id. at 283.

Noting that the reality (in 1983) "hardly suggested abuse," the Court acknowledged that "if such dragnet type law enforcement practices as [the] respondent envisions should

eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable." Id. at 284.

The dragnet practices presaged in Knotts have become today's reality.

As citizens have become aware of the implications of GPS technology, they have expressed their repugnance to its use in government applications.  Various states including Utah, Minnesota, Florida, South Carolina, Oklahoma, Hawaii and Pennsylvania have passed laws that not only impose civil and criminal penalties for the use of this technology but also require exclusion of evidence produced by warrantless GPS monitoring. U.S. v. Maynard, 615 F.3d 544 (DC Cir. 2010), citing Utah Code Ann. §§77-23a-4, 77-23a-7, 77-23a-15.5; Minn. Stat. §§626A.37, 626A.35; Fla. Stat. §§934.06, 934.42; S.C.Code Ann. §17-30-140; Okla. Stat., tit. 13, §§176.6, 177.6; Haw. Rev. Stat. §§803-42, 803-44.7; 18 Pa. Cons. Stat. §5761.

A number of state courts that have considered this question have decided that, as a matter of their respective state constitutions, law enforcement installation of a GPS device constitutes a search requiring a warrant. Commonwealth v. Connolly, 454 Mass. 808, 913 N.E.2d 356 (2009) (GPS installation is presumptively unreasonable); People v. Lacey 787 N.Y.S.2d 680, (N.Y. 2004); People v. Weaver, 12 N.Y.3d 433, 882 N.Y.S.2d

357, 909 N.E.2d 1195 (N.Y. 2009); State v. Jackson, 150 Wash.2d 251, 76 P.3d 217 (Wash. 2003); State v. Campbell, 306 Or. 157, 759 P.2d 1040 (Penn. 1988); State v. Biddle, Not Reported in A.2d, 2005 WL 3073593 (Del. Com. Pl. 2005); see also U.S. Congressional Research Service, Law Enforcement Use of Global Positioning (GPS) Devices to Monitor Motor Vehicles: Fourth Amendment Considerations, (R41663; Feb. 28, 2011), by Alison M. Smith, Legislative Attorney.

Already, twelve states have outlawed police use of GPS tracking without a warrant.

Additionally, various state courts have held that nonconsensual use of GPS tracking technology by individuals amounts to violations of their various state laws. People v. Sullivan, 53 P. 3d 1181 (Colo. App. 2002) (husband guilty of harassment by stalking for using GPS to track whereabouts of ex-wife); State v. Biddle, Not Reported in A.2d, 2005 WL 3073593 (Del. Com. Pl. 2005) (concluding that a victim of defendant's installation of GPS had reasonable expectation of privacy in the undercarriage of her car); L.A.V.H. v. R.J.V.H., Not Reported in A. 3d, 2011 WL 3477016 (N.J. Super. A.D. 2011) (husband violated state's criminal anti-stalking statute for installing GPS tracking devices on wife's car).

In U.S. v. Maynard, 615 F. 3d 544 (D.C. Cir. 2010); certiorari granted U.S. v. Jones, --- S. Ct. ----, 2011 WL

1456728, (U.S. Jun 27, 2011) (NO. 10-1259, 10A760)[2] [3], the D.C.
Circuit Court recognized that GPS technology threatens an
unprecedented level of intrusion into the private lives of
citizens.

While most federal cases have not addressed the impact of
prolonged, continuous surveillance, the Maynard Court directly
addressed this issue, which also presents itself in a much more
exaggerated form in the instant matter.

Maynard first addressed the issue of prolonged surveillance
by distinguishing the quality and quantity of the information
obtained from the "beepers" in Knotts and modern GPS tracking
devices.  While recognizing that the individual has no
reasonable expectation of privacy in their individual discrete
public movements, the Maynard Court noted that:

> Prolonged surveillance reveals types of information not
> revealed by short-term surveillance, such as what a person
> does repeatedly, what he does not do, and what he does
> ensemble.  These types of information can each reveal more
> about a person than does any individual trip viewed in
> isolation.  Repeated visits to a church, a gym, a bar, or a
> bookie tell a story not told by any single visit, as does
> one's not visiting any of these places over the course of a
> month.  The sequence of a person's movements can reveal
> still more; a single trip to a gynecologist's office tells
> little about a woman, but that trip followed a few weeks
> later by a visit to a baby supply store tells a different
> story.  A person who knows all of another's travels can

---

[2]   In its order granting certiorari, the Supreme Court directed the
parties to brief and argue the following question: "Whether the government
violated respondent's Fourth Amendment rights by installing the GPS tracking
device on his vehicle without a valid warrant and without his consent."
    [3]  The United States Supreme Court has scheduled this matter for argument
on November 8, 2011.

deduce whether he is a weekly church goer, a heavy drinker, a regular at the gym, an unfaithful husband, an outpatient receiving medical treatment, an associate of particular individuals or political groups — and not just one such fact about a person, but all such facts. Id. at 562.

The essential difference between the beeper in Knotts and the GPS device here is this.  The beeper allows police to follow an individual on a discrete journey from Point A to Point B. These types of journeys are exposed to the public on a daily basis.  When traveling in a vehicle, the driver exposes to the operator behind him his discrete journey.

The GPS device on the other hand automatically records all journeys, all movements, relentlessly and indefinitely.  No movement goes undetected.  Every journey, every destination, every association and every preference is exposed and recorded in government records.  Ordinary citizens in a free society may reasonably expect these intimate details and patterns to be private and not subject to government monitoring absent judicial approval.

The question as to whether GPS monitoring constitutes a search for Fourth Amendment purposes was recently discussed in the District of Massachusetts.  In considering the conflict among the Federal Circuits, Justice William Young declined to adopt the Maynard standard and held in a Memorandum of Decision on a Motion to Suppress that there was no search or seizure in

the installation and monitoring of a GPS tracking device. U.S.
v. Sparks, 750 F.Supp. 2d 384 (D. Mass. 2010).

However, Judge Young distinguished the facts in Sparks from
Maynard based on the duration and intrusiveness of their
respective GPS tracking.  Judge Young noted that the GPS
tracking in Maynard monitored the defendant twenty-four hours a
day for twenty-eight days. Id.  The monitoring in Sparks, by
contrast, was used only to "initiate visual surveillance." Id.
at 395.  Judge Young observed, "the use of GPS device on
Sparks's vehicle is more akin to the use of the beeper in Knotts
than that of the GPS device in Maynard." Id.

In the instant matter, the GPS device installed on the
Defendant's automobile tracked his whereabouts twenty-four hours
a day for 347 days.  Less than one-tenth of this cumulative,
warrantless surveillance would be impermissible under the
Maynard standard.[4]  Indeed, Judge Young in Sparks based his
rationale on declining to apply Maynard in part on the fact that
the surveillance in that case had not reached Maynard's level of
intrusiveness. U.S. v. Sparks, 750 F. Supp. 2d 384 (D. Mass.
2010).  Here, not only has the Maynard level of intrusiveness
been met, it has been surpassed by a margin of 319 days.

---

[4] This case appears to represent the most prolonged, sustained police
surveillance ever undertaken in any reported decision.

Where as in Sparks, Judge Young found more similarity with

Knotts than Maynard, in this case the GPS device is clearly more

akin to Maynard than Sparks and Knotts.   The Defendant

respectfully submits that the present matter therefore warrants

application of the Maynard standard. U.S. v. Sparks, 750 F.

Supp. 2d 384 (D. Mass. 2010); U.S. v. Maynard, 615 F.3d 544.

   2.   Warrantless Installation of GPS device

By placing GPS devices on the Defendant's vehicles, police

engaged in unlawful seizures of the vehicles. Soldal v. Cook

County, Illinois, 506 U.S. 56, 113 S. Ct. 538 (1992) ("seizure"

of property occurs when there is meaningful interference with

individual's possessory interests in that property), citing

United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct 1652,

1656 (1984). (1992); United States v. Karo, 468 U.S. 705, at

729, 104 S. Ct. 3296, 3310 (1984) (Stevens, J., dissenting);

Commonwealth v. Connolly, 454 Mass. 808, 823 (2009).

In Soldal, the Supreme Court breathed new life into the

Fourth Amendment's protection of property rights, even where no

"search" has occurred. In Soldal, sheriffs assisted with an

unlawful eviction and supervised the removal of the plaintiff's

trailer home.   Because the sheriffs only assisted in removing

the home, but did not search it, the Court of Appeals ruled that

their actions did not implicate any privacy or liberty interest.

The Court of Appeals ruled that a "technical" seizure without any "search" did not implicate the Fourth Amendment.

The Supreme Court rejected this analysis, noting that "our cases unmistakably hold that the [Fourth] Amendment protects property as well as privacy." Soldal at 62.  Citing United States v. Jacobsen, 466 U.S. 109, 113 (1984), the Supreme Court reiterated that a "seizure" of property occurs when there is any meaningful interference with an individual's possessory interests in that property.

Unreasonable governmental interference with a person's property, irrespective of a search, offends the Fourth Amendment. See United States v. Place, 462 U.S. 696 (1983) (while subjecting luggage to a "dog sniff" did not constitute a search, taking custody of the luggage was a seizure implicating the fourth amendment).

In Cardwell v. Lewis, 417 U.S. 583 (1974), police towed the defendant's car from a public lot and locked it in an impound lot.  Therein, police obtained exterior paint scrapings and tire samples.

The Cardwell plurality held that no search took place because there was no expectation of privacy in the exterior of the car. Id. at 591-592.  However, both the plurality and the dissent in Cardwell agreed that the seizure of the defendant's automobile implicated the Fourth Amendment.  The justices

differed only in the degree of protection which the Fourth
Amendment provided on the facts - the plurality reasoned that
probable cause was sufficient under the circumstances to justify
the seizure. Id. at 595-596.  The dissent insisted that a
warrant was also required. Id. at 597-598.

The installation of a GPS device on a vehicle constitutes a
seizure.  "The owner of property, of course, has a right to
exclude from it all the world, including the government, and a
concomitant right to use it exclusively for his own purposes.
When the government attaches an electronic monitoring device to
that property, it infringes that exclusionary right.  In a
fundamental sense, it has converted the property to its own
use." United States v. Karo, 468 U.S. 705, 729 (1984) (Stevens,
J., dissenting); see also Commonwealth v. Connolly, 454 Mass.
808 (2009) (installation of GPS device on a vehicle constituted
seizure requiring a warrant under state constitutional law).[5]

Justice Stevens based his dissent on Silverman v. United
States, 365 U.S. 505 (1961), in which police installed a
microphone into a heating system in order to overhear
conversations.  In that case, the installation of the microphone
was an unlawful seizure because police "usurped" part of the
defendant's property and converted it to government use.

---

[5] In United States v. Garcia, 474 F.3d 994 (7th Cir. 2007), the Court
specifically declined to address the issue of whether the installation of a
GPS device amounted to a seizure on the facts of the case.

That is the type of warrantless seizure which the police conducted in this case.  By installing the GPS device on the Defendant's vehicle here, police violated the Defendant's right to use his property to the exclusion of all others.  Each time the Defendant used his car to travel, the government used his car to automatically record evidence against him.  By installing the device, the government usurped the Defendant's property and secretly converted it into a tool of its own use, without any prior judicial determination of probable cause.

In the matter now before the Court, the GPS tracking device was installed on the Defendant's car on or about August 27, 2009.  However, the Defendant was not arrested until August 9, 2010. For the uninterrupted period from August 27, 2009 to August 9, 2010 (totaling 347 days), the government converted the Defendant Baez's cars government use.  This was a seizure requiring a warrant.

CONCLUSION

WHEREFORE, the Defendant requests that this Honorable Court allow the Defendant's motion to suppress.

Respectfully submitted,
Jose Baez,
By and through his attorney,

/s/ Murat Erkan
Murat Erkan, BBO: 637507
Erkan & Associates, LLC
300 High Street
Andover, MA  01810

                                        (978) 474-0054

Dated: August 29, 2011