UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                             )
UNITED STATES OF AMERICA     )
                             )
          v.                 )  CRIMINAL NO. 10-10275-DPW
                             )
JOSE L. BAEZ                 )
                             )
```

SENTENCING MEMORANDUM OF THE UNITED STATES

The United States of America, by and through Assistant
United States Attorneys David G. Tobin and Robert Richardson,
respectfully submits this Sentencing Memorandum pursuant to this
Honorable Court's Amended Procedural Order dated August 28, 2012.
[Docket Entry No. 86] The United States respectfully asks this
Honorable Court to impose the following sentence: imprisonment
for a period of 15 years, supervised release for a period of 5
years, and a $400.00 special assessment.  The United States
further requests that the Court order restitution in the amount
of $3,240,520.97.

Statutory Maximums and Mandatory Minimums

Pursuant to 18 U.S.C. § 844(I), for his conviction on Count
One of the Superseding Indictment, which charges arson resulting
in personal injury, Defendant faces a statutory maximum sentence
of imprisonment of 40 years, and a minimum mandatory sentence of
imprisonment of 7 years.

Pursuant to 18 U.S.C. § 844(I), for his convictions on
Counts Two through Four of the Superseding Indictment, each of

which charges arson, Defendant faces a statutory maximum sentence of imprisonment of 20 years on each count and a mandatory minimum sentence of imprisonment of 5 years on each count.

In total, Defendant faces a statutory maximum sentence of 100 years, and a mandatory minimum sentence of 7 years.

Guideline Calculations

The United States agrees with the Guideline calculations contained in the Presentence Report.  Pursuant to USSG § 2K1.4, Defendant's Base Offense Level is 24.  The United States also agrees, that because Defendant pled guilty to setting 4 arson fires, the grouping principles found at USSG § 3D1.4 apply and 4 levels are added to Defendant's Base Offense Level.  The United States further agrees that Defendant is entitled to a 2-level reduction pursuant to USSG § 3E1.1(a) because Defendant accepted responsibility by pleading guilty to the Superseding Indictment. Defendant's resulting Total Offense Level is 26.

The United States objects to Defendant receiving a reduction pursuant to USSG § 3E1.1(b), which authorizes a one level reduction upon the motion of the government where "the  defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his attention to enter as plea of guilty, thereby permitting the government to avoid preparing for trail and permitting the government and the court to allocate their respective resources efficiently."                        2

On July 19, 2012, the Court scheduled the trail to commence on September 4, 2012.  On August 17, 2012, Defendant's predecessor counsel filed a Motion for Rule 11 Hearing. [Docket Entry 73]. That same day, the Court scheduled a Rule 11 hearing for August 23, 2012. [Docket Entry 74]. As this Court may recall, Defendant's new counsel was not available to be present at the Rule 11 hearing scheduled for August 23, 2012, and the plea hearing was postponed until August 28, 2012.

The United States expended considerable time and effort preparing for trial.  The two Assistant United States Attorneys assigned to prosecute the case interviewed more than twenty potential trial witnesses in the weeks after the trial date was set and filed Proposed Jury Instructions [Docket Entry 75], Proposed Voir Dire [Docket Entry 76], and a Witness List [Docket Entry 80].

In his objections to the Presentence Report, Defendant's counsel acknowledged that the original Rule 11 date had to be rescheduled "due to personal scheduling conflicts by his counsel," and noted that he had "repeatedly urged the Government to stop preparing for trail."  Although the present defense counsel was not available to attend the originally scheduled Rule 11 hearing, Defendant had two additional counsel, who were available to handle the Rule 11 on the original date.  Defendant, presumably with the assent of his current counsel, opted to delay

the Rule 11 until such time as his new counsel could be present.

The United States could not stop preparing for trial until Defendant's guilty plea was accepted by the Court and the Rule 11 hearing was completed.  The defense counsel is well aware that there is always a risk that a defendant might change his mind at the last moment and choose not to plead guilty or be incapable of admitting the necessary facts required to sustain a guilty plea. With a fast-approaching firm trial date of September 4, 2012, and more than 50 potential trial witnesses, it would have been irresponsible and quite risky for the government to have ceased trail preparation prior to the completion of the Rule 11 hearing on August 28, 2012.

The United States agrees with United States Probation that Defendant falls withing Criminal History Category I and that his recommended Guideline sentence is 84 months.  The United States further agrees that without the 84-month statutory mandatory minimum sentence, Defendant's otherwise applicable Guideline range would have been 63 to 78 months.

Appropriateness of a 15 Year Sentence

Despite a recommended Guideline sentence of 84 months, the United States believes a 15 year sentence is appropriate given the enormity and heinous nature of Defendant's criminal behavior. The government further believes that the sentencing factors set forth at 18 U.S.C. § 3553(a) support a 15 year sentence.

<u>18 U.S.C. § 3553(a)(1) – The Nature and Circumstances of the</u>
<u>Offense</u>

The Offense Conduct section of the Presentence Report
details the horrific nature of the four arson fires set by
Defendant.  Defendant's four charged arson fires imperilled the
lives of dozens of individuals, injured five firefighters and one
civilian, and caused at least $3,240,520.97 in fire-related
damage and loss.  Two of the four charged fires targeted multi-
unit residential buildings and were set in the middle of the
night at the front doors of both buildings.

At the 11 Firth Road fire, a three family wood-framed
structure, a quadriplegic residing in the first floor apartment
had to be evacuated out the building's rear door to escape the
flames and smoke.  In that same building, an elderly female
tenant on the third floor had to be evacuated by the Boston Fire
Department over a ladder. Her son had to be escorted down the
back stairs of the dwelling by a firefighter, who gave the man
bottled oxygen to safely make it through the smoke.  The
landlord, who resided in the second-floor apartment, jumped from
the second floor and sustained a leg injury that required medical
attention.  Additionally, five firefighters were injured in the
fire.

In the Bay State Road fire extensive damage was done to the
residential and commercial units in the targeted building.  One
tenant had to be evacuated from the building by the Boston Fire

Department.

Defendant's motive for each of the four charged fires was revenge.  As noted in the Presentence Report, Defendant had a relationship with individuals associated with each of the targeted buildings.  It appears Defendant's motivation to set the arson fire at 11 Firth Road was that a resident of the first-floor apartment stopped taking illegal bets for Defendant, and two residents of the third-floor apartment stopped placing bets with Defendant.  Defendant also may have been upset that a male resident of the third-floor apartment made a pass at Defendant. The fire caused at least $215,745 in damages.

It appears Defendant's motivation for setting the Jamaica Plain Auto Body fire was his dispute with the owner of the auto body shop.  Defendant was dissatisfied with work done on his car by the auto body shop and sued for the return of the money he paid for the repair.  Defendant was unsuccessful in small claims court and set fire to the auto body shop to exact revenge.  The fire caused $196,206 in damages.

It appears Defendant's motivation for setting the 21 Bay State Road fire was a billing dispute with the dental practice on the first level of 21 Bay State Road.  The fire caused extensive damage to the dental office, as well as the residential units housed in the building.  Insurance companies paid a total of $2,775,543 for claims arising as a result of the arson fire.

6

Finally, it appears Defendant's motivation for setting fire to the Whole Foods Market was an employment-related dispute. Defendant had been employed by Whole Foods Market and had complained of unfair treatment in the assignment of work duties. Whole Foods Market estimated that its loss as a result of the fire was approximately $53,026.37.

In setting fire to the above-described buildings, two of which were residences, Defendant displayed an utter lack of concern for the harm and possible loss of life that could have resulted from the arson fires. Defendant had to have known that the risk to human life was tremendous, particularly where he set fire to residences in the middle of the night by stacking gasoline soaked tires and rags at the front entrances to the buildings. Defendant's actions were not impulsive. Rather, setting each of the four charged fires required extensive planning and a significant amount of time and effort. Defendant had to secure old tires, rags, and gasoline. He had to transport these items to the targeted buildings and he had to place the tires, rags and gasoline at the front of each building before setting each fire.

The History and Characteristics of the Defendant

In addition to considering the nature and circumstances of the offense, 18 U.S.C. § 3553(a) requires the Court to consider the history and characteristics of the defendant. This includes

7

considering other criminal acts committed by the defendant.  As noted in the Presentence Report, the United Sates believes that there is sufficient evidence to prove to a preponderance of the evidence that Defendant set at least six additional arson fires. As with the four charged fires, Defendant was linked to each of the uncharged fires.  Additionally, each of the six uncharged fires was set in the middle of the night with the use of gasoline.  Gasoline soaked tires were used in two of the uncharged fires.  Although the uncharged fires are not considered relevant conduct and do not effect the statutory maximum, statutory mandatory minimum, or the Guidelines, the United States believes that it is appropriate for the Court to consider the additional fires pursuant to 18 U.S.C. § 3553(a), as they have a direct bearing on Defendant's history and characteristics, as well as his amenability for rehabilitation.


January 6, 2009, Maria's Hair Fashion Salon, 138 South Street, Roslindale

On January 6, 2009, at 4:06 a.m., the Boston Fire Department responded to a report of a fire at Maria's Hair Fashion Salon located at 138 South Street, Jamaica Plain.  Remnants of burned tires, rags and clothing were found at both of the front entrances to the Salon.[1]  The Boston Fire Department Fire

---

[1]This was the third suspicious fire at Maria's Hair Fashion Salon.  In March 2006, at the same address, a male was observed

Investigation Unit conducted an origin and cause investigation, which determined that the fire was incendiary (arson) in nature. The fire caused heavy smoke and water damage to the building and interrupted work at the business for a period of time.

According to Maria Joseph, the co-owner of Maria's Hair Fashion Salon, Baez's mother, Sylvia, is a frequent customer at her salon and in 1997 Sylvia invited her to a family party.  At the party, Ms. Joseph met Baez and she and Baez began a dating relationship, which lasted for about two to four weeks in the summer of 1997.  The relationship was intimate and the two had several dates, including going out to dinner and dancing.  After Ms. Joseph broke up with Baez, he called her crying and pleading with her to continue their relationship.  Ms. Joseph did not maintain contact with Baez and last saw him sometime around 2005 at the McDonald's Restaurant on Cummings Highway.

The evidence proves to a preponderance standard that Baez set this fire.  It bears a striking resemblance to arson fires

---

using a hammer to break the window of the Salon and throw a burning object inside.  A witness described the suspect as a light-skinned Hispanic or white male, about six feet in height, who fled the area in a white or silver Lexus IS 300.  A review of Registry of Motor Vehicles records revealed that in March 2006 Baez was the registered owner of a gray Lexus IS 300.  The August 2006 fire caused extensive damage to the Salon and the business relocated to Fairmont Street, Hyde Park.  In January 2008, the Fairmont Street location experienced a suspicious fire.  The ATF classified the January 2008 fire as an arson, but the BFD did not.  After the January 2008 fire, the Salon moved back to 138 South Street, Jamaica Plain, and the third fire occurred.

Baez has admitted setting.  First, as is true of the four charged fires, this fire was set in the early morning hours.  Second, as is true of two of the four charged fires, the fire was set using tires and old clothes doused in gasoline.  Third, as is true of all four charged fires, Baez knew and had reason to resent a person associated with the building - in this case, Ms. Joseph, who had spurned his romantic advances.

A forensic search of Baez's computer determined that Baez used the Google search engine to search "hyde park ma maria hair salon fire," "jamaica plain ma maria haer salon fire," jamaica plain ma maria hair salon fire," and "fire in jamaica plain ma maria hair salon,"

February 7, 2009, Condominium Complex, 22 Sigourney Street, Jamaica Plain

On February 7, 2009, at 4:43 a.m., the Boston Fire Department responded to a fire at a multi-unit condominium complex located at 22 Sigourney Street, Jamaica Plain.  The remnants of burnt tires and clothing were discovered in the area of the front porch and doorway of 22 Sigourney Street.  The fire and smoke caused heavy damage to the residential building. The Boston Fire Department Fire Investigation Unit conducted an origin and cause investigation, which determined that the fire was incendiary (arson) in nature and originated on the front porch of the structure.

A surveillance video camera installed over the front door of

the complex captured a suspect setting the fire.  A review of the video revealed that the suspect is a light-skinned male with dark hair and of average build.  The video showed the suspect carry three automobile tires and place them against the front door of the building.  The recording also shows that the suspect placed what appears to be clothing or rags inside of the tires and poured a liquid on top of the clothing or rags.  The suspect then struck a match, igniting the tires and clothing or rags.  The suspect then ran from the condominium complex.  A second video surveillance camera captured the suspect running away and an unidentifiable vehicle departing from the front of the complex. Although it is not possible, given the quality of the video, positively to identify the suspect, the suspect is consistent in appearance with Baez.

The investigation revealed that at the time of the fire Baez was renting a garage at 30 Iffly Road, which is in the same neighborhood as Sigourney Street.  Additionally, Baez previously lived on Iffly Road.  While the government cannot establish a direct connection between Baez and the occupants of 22 Sigorney Street, the characteristics of the Sigorney Street arson fire are remarkably similar to Baez's demonstrated modus operandi.  Like the charged arson fires at Jamaica Plain Auto Body and 21 Bay State Road, and like the Maria's Hair Fashion Salon fire described above, the Sigourney Street arson fire was set using

11

tires to block the front entrance to the building.  The Sigourney Street arson fire also was set early in the morning (4:43 a.m.), as were Baez's other arson fires.

The date of the Sigorney Street fire also supports the conclusion that it was set by Baez.  The Sigourney Street condominium complex was set ablaze on February 7, 2009, during a period in which Baez was setting other tire fires.  Two of the charged tire fires also occurred in 2009: on April 29, 2009, Baez set Jamaica Plain Auto Body on fire using tires; and on July 31, 2009, Baez set 21 Bay State Road on fire using tires.  The Maria's hair fashion Salon fire described above also occurred in 2009, on January 6, 2009.  The Sigourney Street arson fire followed the same pattern as the other tire fires set by Baez in 2009.[2]

A forensic search of Baez's computer determined that Baez

_____

[2] On January 28, 2009, at approximately 3:30 a.m., the Boston Fire Department responded to a reported fire at 111 School Street, Jamaica Plain, Massachusetts.  The structure at 111 School street was a two-and-a-half story wood frame building containing two residences.  The fire and smoke caused extensive damage to the property.  The Boston Fire Department Fire Investigation Unit conducted an origin and cause investigation and concluded that the fire was incendiary (arson)and had two points of origin, the open front porch of the structure and the interior vestibule of the structure.  The remnants of burnt tires were found at both points of origin.  The location of the fire, 111 School Street, is 0.94 miles (according to Mapquest) from 22 Sigourney Street.  An elderly neighbor reported that at approximately 2:45 a.m. on the morning of the 11 School Street fire, she observed a tall white or white Hispanic male, with short hair, a medium build, and wearing jeans and a gray jacket walk in the direction of 111 School Street carrying two tires.

used the Google search engine to search "house fire in jamaica plain ma."

<u>February 18, 2008, Multi-Family Residence,10 Sheldon Street, Roslindale & June 23, 2008, Multi-Family Residence, 4085 Washington Street, Roslindale</u>

On February 18, 2008, at approximately 3:40 a.m., the Boston Fire Department responded to a report of a fire at 10 Sheldon Street, Roslindale.  The structure at 10 Sheldon Street was a wood-framed residential structure with three apartments.  The fire caused significant damage to the structure.  The Boston Fire Department Fire Investigation Unit conducted a cause and origin investigation and determined that the fire was incendiary (arson) in nature and its point of origin was the interior common hallway near the entrance to one of the apartments.  Gasoline was used to start the fire.

On June 23, 2008, at approximately 3:46 a.m., the Boston Fire Department responded to a report of a fire at 4085 Washington Street, Roslindale.  The structure at 4085 Washington Street was a wood-framed residential structure with three apartments.  The fire caused significant damage to the structure. The Boston Fire Department Fire Investigation Unit conducted a cause and origin investigation and determined that the fire was incendiary (arson) in nature and its point of origin was the exterior front porch and entranceway of the structure.  Gasoline was used to start the fire.

According to Ottilia Tejeda, co-owner of 10 Sheldon Street, her husband's first cousin, Julio Gonzalez, came to live at 10 Sheldon Street approximately one month before the February 18, 2008 fire.  Gonzalez moved into 10 Sheldon Street after breaking up with his wife, Saida Baez, who is the sister of Jose Baez. According to Ms. Tejeda, Baez and Saida were married for approximately twenty-two years and had four children together. According to Ms. Tejeda, Baez came to 10 Sheldon Street on a few occasions looking for Gonzalez about money Gonzalez owed him. After the fire at 10 Sheldon Street, Gonzalez moved to 4085 Washington Street.

According to Gonzalez, in 2001 he and Saida opened a bakery/restaurant in Brockton.  When the business was suffering financially, he asked Baez for money to help pay the bills.  Baez gave him $5,000.00 as an interest-free loan with the understanding that Gonzalez would pay the money back in small amounts over an undetermined amount of time.

In 2005 Baez came to 32 Rockland Street, West Roxbury, where Gonzalez and Saida were then living, and demanded that Gonzalez pay off the rest of the loan.  At the time, Gonzalez still owed Baez about $2,800.00.  The conversation with Baez became heated after Gonzalez informed Baez that he did not have money to pay him.  Gonzalez told Baez that he needed his money to feed his children.  According to Gonzalez, Baez responded by threatening

14

Gonzalez, saying "I don't care if your kids die."  Gonzalez responded back to Baez with "My kids will not die, you'll die." Gonzalez clearly recalled that Baez than replied with "You'll be dead with your kids."  Gonzalez and Saida's divorce became final in 2008.

On one occasion prior to the fire at 10 Sheldon Street, Gonzalez met with Baez and made another payment on the loan. Baez offered to drive Gonzalez home.  As Gonzalez exited Baez's car, he noticed that Baez was writing something on a piece of paper.  Gonzalez believed Baez was writing down Gonzalez's address.

Accordingly, in the span of four months, two homes resided in by Julio Gonzalez were set ablaze in the middle of the night by an arsonist who chose to start both gasoline fueled-fires at the front of both targeted structures.  Mere coincidence cannot explain two fires in four months at buildings where the common denominator was Gonzalez.  Considering that Baez was angry that the loan had not been repaid and had threatened Gonzalez by warning Gonzalez that he would be dead along with his kids, and given that the record shows Baez often resorted to arson to retaliate against those with whom he had disputes, the record establishes by a preponderance of the evidence that Baez set these fires.

As noted above, a forensic search of Baez's computer

determined that Baez used the Google search engine to search "roslindale ma house on fire."

March 14, 2008, El Centro Nightclub, 60 Common Street, Lawrence

On March 14, 2008, at approximately 3:07 a.m., the alarm at the El Centro nightclub at 60 Common Street, Lawrence activated. It was later determined that the nightclub had a fire.

The Lawrence Fire Department arrived, made a forced entry into the club, and encountered smoke. The firefighters also noted the strong smell of gasoline, and the presence of three water jug containers on the floor. The water jugs found at the scene appeared to have tape and a possible wick on the lids of each jug. A hammer was found near the door with the broken window. The scene was secured and fire investigators were notified. The origin and cause investigation determined that the fire was incendiary (arson) in nature and that gasoline had been used.

The security camera outside the club recorded the activity in front of the building. The video showed that at approximately 3:06 a.m., a dark colored, four door automobile parked close to the front of the nightclub. The driver exited the vehicle and made two trips from his car to the front entrance apparently carrying the water jugs found inside the nightclub. An inside security video shows the contents of one of the jugs being poured

into the nightclub.  Immediately before an explosion is visible
on the video, the driver of the parked car is seen running from
the area of the explosion.

The dark-colored, four door automobile driven by the
arsonist appears identical to Baez's Chevrolet Caprice.  The box-
like shape of the automobile, the long rectangular rear lights,
the silver accent trim, and the wheel covers all match Baez's
car.

A forensic search of Baez's computer determined that Baez
used the Google search engine to search "fire in a night club"
and "fire in a nightclub."

September 6, 2008, E-Ink Incorporated, 733 Concord Avenue,
Cambridge

On September 6, 2008, at approximately 4:23 a.m., the
Cambridge Fire Department responded to a report of a fire at 733
Concord Avenue, which housed E-Ink Incorporated, a company that
produced ultra-thin display screens.  The responding firefighters
observed fire emanating from a first-floor window of the
building.  Firefighters made a forced entry into the building and
found that the fire was contained by an activated sprinkler
system.

The Cambridge Fire Department conducted an origin and cause
investigation and determined that the fire was incendiary (arson)
in nature.  The fire originated in an office, where investigators
found what appeared to be a smashed window and two partially-

17

burned, one-gallon water jugs on the office floor.  A strong odor of suspected ignitable liquid was present.  The presence of gasoline was later confirmed by laboratory testing of samples taken from the fire scene.  Additionally, a white cloth was found draped through the hole in the office window.  The cloth was partially burned and a portion of the burned cloth was found on the ground outside the window.

During the execution of the federal search warrant at Baez's apartment on August 9, 2012, a printed form with the heading "E-Ink" was seized from Baez's bedroom.  The form had "Micro Complete" handwritten on it.  Similarly, during the execution of the federal search warrant at Baez's rented garage bay on August 13, 2010, a handwritten document was seized with the words "E Ink Corporecion" at the top of the document and a handwritten list of names appearing underneath the heading.  The first handwritten name was "Jose Luis Baez."  Baez's phone number also appeared on the form.  The names of some of Baez's relatives also appeared on the handwritten list.

As noted previously, a burned T-shirt with the logo for Micro Complete was found at the scene of the April 29, 2009 arson fire at Jamaica Plain Auto Body.  A similar Micro Complete T-shirt was found during the August 13, 2010 search of Baez's rented garage space in West Roxbury.

Micro Complete is a defunct cleaning company.  Micro

18

Complete previously had the contract to provide cleaning services for E-Ink in Cambridge.  The investigation further revealed that two of Baez's brothers worked for Micro Complete, and one of the two was the supervisor of the  crew assigned to clean E-Ink.  The former operation manager for Micro Complete recalls that a third Baez brother sometimes worked cleaning E-Ink.

A forensic search of Baez's computer determined that Baez used the Google search engine to search "e ink corporation" and "733 Concord Avenue, Cambridge, Ma."

Defendant Possessed 401.6 Grams of 81.7% Pure Cocaine

On August 13, 2010, federal agents executed a federal search warrant at a garage rented by Jose L. Baez located at 21 Ivory Street, West Roxbury, Massachusetts.  The search of the garage resulted in the seizure of numerous items, including a suitcase. The suitcase contained, among other items, approximately 13 small egg-shaped objects covered with aluminum foil, and a small sandwich baggie that contained a brown, cornmeal-like substance. The egg-shaped objects covered with aluminum foil also contained a brown substance.  Some of the egg-shaped objects were inside a black plastic bag.  The suitcase and its contents were seized and transported to the Boston offices of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, where they were placed in an evidence vault.  Back at the Boston offices of the ATF, the brown substance field tested negative for the presence of heroin.

On September 7, 2012, Special Agent Brian Oppedisano opened the suitcase and, upon observing the contents, decided to field test the brown powder for the presence of cocaine.  The brown substance field tested positive for cocaine.  The brown substance and its wrappings (aluminum foil and baggie), as well as the black plastic bag, were transported to the Drug Enforcement Administration Laboratory in New York for analysis.  It was determined that the brown substance was approximately 401.6 grams of about 81.7% pure cocaine.  Additionally, Mr. Baez's fingerprint was found on the black plastic bag containing some of the egg-shaped objects.

<u>18 U.S.C. § 3553(a)(2)(A) – The sentence needs to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense</u>

A 15-year sentence will reflect the seriousness of the offense, promote respect for the law, and provide a just punishment for the offense.  Defendant is a serial arsonist who has pled guilty to setting four arson fires.  In addition, evidence establishes by a preponderance that he set at least six more arson fires.  Arson is one of the most reprehensible and dangerous criminal offenses with which this Honorable Court deals.  While the financial cost of Defendant's criminal acts, $3,240,520.97, is enormous, the resulting injuries to five firefighters and the landlord of 11 Firth Road, as well as the emotional terror the fires must have caused, are of even greater

significance.  We can only imagine the fear experienced by the elderly woman forced to flee the flames over a ladder from her third-floor apartment, or the terror suffered by the quadriplegic unable to flee the fire outside his bedroom window without the aid of a family member.  The owner of the dental practice suffered enormous disruption in his professional life as a result of the extensive damage to his practice.  Every one of Defendant's victims suffered some loss and pain as a result of Defendant's intentional, cruel criminal acts.

18 U.S.C. § 3553(a)(2)(B)- The Sentence Needs To Afford Adequate Deterrence To Criminal Conduct

A sentence of less than 15 years will not serve the purposes of general deterrence.  Defendant is a serial revenge arsonist. His multiple crimes caused millions of dollars of damage, imperilled the lives of dozens of innocent people, and caused injury to five firefighters and one homeowner.  He struck under the cover of night and was unmoved by the destruction he caused. The government respectfully submits that the public will view a sentence of less than 15 years as unacceptably lenient. Moreover, others tempted to exact revenge in a similar manner are not likely to be dissuaded from their criminal impulses by learning that Defendant received less than 15 years for his heinous crimes.

18 U.S.C. § 3553(a)(2)(c)- The Sentence Needs To Protect The Public From Further Crimes Of The Defendant

Defendant is a danger to society.  He committed numerous well-planned, exceedingly dangerous crimes over a lengthy period of time.  His crimes were not committed in the passion of the moment but rather were planned and committed to seek revenge on imagined slights that in some instances occurred long before. There is nothing to support an inference that Defendant has changed or committed himself to live a law abiding life. Defendant will pose a significant risk to the safety of the community whenever he is released from federal prison.  The only way to guarantee that Defendant will not set other fires, destroy property and potentially kill other people is to keep him incarcerated.

<u>18 U.S.C. § 3553(a)(2)(D)- The Sentence Needs To Provide The Defendant With Needed Educational or Vocational Training, Medical Care, Or Other Correctional Treatment In The Most Effective Manner</u>

Defendant did not commit his crimes because he lacked educational or vocational training.  Defendant has a lengthy employment history.  Although Defendant was engaged in the illegal taking of bets and appears to have augmented his income with involvement in cocaine trafficking, as evidenced by his possession of a large quantity of cocaine, Defendant has the requisite skills to earn a living.  Consequently, Defendant's need for educational or vocational training is minimal.  There is nothing about Defendant's health that warrants the consideration of a lesser period of incarceration.

22

<u>A 7-Year Sentence Is Inadequate</u>

The 7-year statutory mandatory minimum sentence, which is the Guideline recommended sentence, is grossly inadequate given the enormity of Defendant's criminal acts.  Defendant faces a mandatory minimum sentence of 7 years for Count One alone, which charges the 11 Firth Road fire.  The additional 3 arson fires to which Defendant pled guilty do not increase his mandatory minimum sentence, nor do the additional 6 arson fires set by Defendant. Even if a 7-year period of incarceration were adequate punishment for the 11 Firth Road fire, it is entirely inadequate for the 3 other charged fires, let alone the 6 other arson fires set by Defendant.

<u>Conclusion</u>

The United States respectfully asks this Honorable Court to impose a sentence of imprisonment of at least 15 years.

Respectfully submitted,

Carmen M. Ortiz
United States Attorney

By:   <u>/s/ David G. Tobin</u>
DAVID G. TOBIN
ROBERT E. RICHARDSON
Assistant U.S. Attorneys

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system
will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF)].

<u>/s/ David G. Tobin</u>
DAVID G. TOBIN
Assistant United States Attorney

Date: November 21, 2012