**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**File Number 10-10275-DPW**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **JOSE BAEZ** | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES THE Defendant, and respectfully submits this memorandum regarding his

sentencing issues:

**Introduction**

To get to the point, the Defendant has reviewed the Government's sentencing

memorandum, and with all due respect to their sentiments, they have pulled an arbitrary number

"out of thin air"[1] as a recommended sentence, without any regard to: a) Congress' sentiments on

the sentencing guidelines; b) Congress' sentiments on the rules of grouping like offenses; c) the

absence of any criminal record on the part of the Defendant; d) the fact that three of the four

arsons were done to businesses closed at the time of the offense, with no apparent intention to

cause harm to the public; e) the fact that only one of the arsons involved an alleged intention to

cause bodily harm which the sentences guidelines have accounted for; and f) the fact that the

Government's request for restitution more than adequately addresses the loss of property, and

does not serve as an additional factor to ratchet up the Defendant's sentence another 8 years.

---

[1]   The 15 year sentence just seems like a number that sounds "good" to the Government.  It does not provide any rationale based upon other Defendants who have been charged or convicted under like circumstances, or any rationale in relationship to the sentencing guidelines.  Again, it just sounds "good" to them.  Frankly, to just throw a number into the hat, without any rationally based calculation of the same, really does not aid this Court one-bit in determining a fair and applicable sentence.

After review of all the relevant considerations that were omitted by the Government in its sentencing memorandum, what remains is mere name-calling on the part of the Government – repeatedly branding the Defendant as a revenge-motivated "serial arsonist".  In response to what is left, the Defendant submits that while his acceptance of responsibility, for setting four separate fires over a 2 year period, provides fodder for the Government to apply this label, Congress however, has already taken repeat offenders like the Defendant into account, in aid of sentencing, via its rules of grouping, and the Defendant's sentence has already been so enhanced according to Congress' consideration of the Defendant's status as a repeat-offender.   What follows is an overview of the Government's lack of consideration of the aforementioned issues.

**The Sentencing Guidelines, While Advisory, Reflect Congress' Consideration of the Crime**

According to the Government's sentencing memorandum, they raise no qualms with Probation's sentencing calculation , but as an aside, states that the Defendant should not receive an additional point under USSG §3E1.1(b), because the Defendant's plea on August 28, 2012, prevented the Government from "allocating their respective resources efficiently".  Without focusing too much on this contention, as it does not affect the minimum-mandatory sentence the Defendant is facing, it is worth noting that the reasons the Government gave for having to prepare for trial are weak[2], and more importantly, **have nothing to do with any action committed by the Defendant himself.**

As the Court is well aware, it set the trial date approximately 6 weeks after its denial of the Defendant's Motion to Suppress – said denial coming on July 19, 2012.  As recent as August 5, 2012, the Government will not deny that the Defendant inquired as to a "drop-dead" date upon

---

[2]   In their sentencing memo, they cite to having to file "jury instructions" and a witness-list" – both of which can be presumed to be boiler-plated, or a typical "cut and paste" job requiring minimal effort.  As far as interviewing witnesses, there has been no disclosure as to the amount of time they expended doing so, and whether it amounted to significant trial preparation.

which to avail himself of a Rule 11 hearing so as to receive the acceptance of responsibility

gratuity.  That question was not answered, but from following communications, it was apparent

that the Government was put on notice of the Defendant's intention to plead guilty.  The fact that

it did not happen sooner must lie exclusively to "scheduling constraints" – first by the tight

window set by the Court, and then the undersigned's personal situation – neither of which can be

attributed to the Defendant.  The only reason why the Government does not want to give the

Defendant this "unnecessary"[3] extra point is because the Defendant's *otherwise applicable*

guideline range would be under five years – thus exposing the Government's actual intention to

triple the Defendant's sentence (via its 15 year recommendation).  The Defendant merely states

that whether the Court grants the Defendant this additional point, or not, should really have no

effect on the length of the sentence imposed, unless the Court chooses to work from a starting

point of the Defendant's otherwise applicable guideline range, rather than the minimum

mandatory sentence – an unlikely proposition.

All of that said, the Defendant finishes up his argument with the notion that nowhere in

the Government's 24 page sentencing memorandum, do they even mention why they believe

Congress is wrong, or why Congress has not appreciated the seriousness of the Defendant's

conduct in their assessment of the minimum-mandatory sentence in this case, as well as what

base offense level should apply.   The Government does insert various "sound-bites" to support

their cause – namely that "arson is one of the most reprehensible and dangerous criminal

offenses…" and that the Defendant "displayed an utter lack for the harm and possible loss of

---

[3]   The Defendant calls this point "unnecessary" because it really has no effect on the length of the sentence
imposed, unless the Court decides to ratchet up the Defendant's sentence, and choose to work from a starting point
of the Defendant's *otherwise applicable* Guideline range, rather than the minimum mandatory sentence – a
proposition which the Defendant does not deem likely.  By the Defendant's account, this extra point is mere "water
that does not affect the bridge".

life."[4] – intimating that these considerations were not pondered by Congress?  The Government's

specific omission, which as a consequence fails to distinguish the Defendant's commission of his

crime(s) with that of the crime of arson in general, is the most significant omission in the

Government's memorandum, as it exposes the true nature of the Government's recommendation

on sentencing -- a mere disapproval with the law as determined by Congress (appreciating of

course that the "law" is a mere advisory assessment on punishment).


### The Sentencing Guidelines Also Reflect the Nature of the Multiple Arsons Committed by the Defendant

The Government also concedes, in its sentencing memorandum, that the Defendant

should receive a 4 level enhancement for committing multiple counts of the same crime.  This

sentencing enhancement obviously means that Congress (as well) has considered the aggravating

factor of repeat offenders when determining sentence.  Furthermore, and not only has Congress

accounted for it, but the accounting has been applied in this case.  The Government's only retort

to this accounting is just pure disdain for such an assessment, arguing in essence, "not-enough".

What the Government fails to realize is there is a specific reason behind why the time is "not-

enough" in their own eyes.  It is because the Defendant has no criminal record (a fact they don't

even acknowledge in their sentencing memorandum).  Upon review of the schematics of how

enhancements ratchet up a Defendant's sentence according to the length of criminal history, one

can easily see how the Defendant's sentence would jump exponentially with a 4 level

enhancement, commensurate with his record.  Taking this previously un-contemplated factor into

account, we see now that what the Government is really arguing is "not-enough for a 41 year old

---

[4]    See Government's sentencing memorandum at page 17 and page 4.

man with no criminal history" – an unpersuasive argument.  The Defendant's lack of criminal

history is developed even further below.

### The Lack Of Criminal History on the Part of the Defendant

The Defendant submits that his lack of criminal history is perhaps the most significant

basis, and thus the most compelling argument, in support for consideration of a sentence at or

around the minimum-mandatory range – a sentence which (as of now) exceeds his *otherwise*

*applicable*  guideline range, due to his lack of criminal history.  To state in its plainest of terms,

the Defendant has gone through his life without any significant brushes with the law.  That must

account for something in the context of sentencing, and more importantly, whether or not to

show any leniency in the imposition of sentence.   The Defendant seriously doubts that if he had

a significant record, and was potentially exposed to a 15 year sentence for his crime based upon

that record, the Government would seek to double it to 30 years, for 4 crimes that involve loss of

property, and where only one caused actual, but not life-threatening harm upon completion.

It would seem as if the Government seeks to punish the Defendant, and excessively he

might add, because his lack of criminal record saves him from the full force and effect of the

sentencing guidelines.  The Government's proposed punishment, seems to require that the

Defendant, for not having an extensive criminal record, must get a sentence akin to an offender

with an extensive criminal history.  Unless, of course, the Government is arguing that anybody

who is convicted of four arsons (which would include 3 businesses that were closed during the

time of offense) must receive at least 15 years, in spite of criminal history because of the obvious

disregard to human life.[5]

---

[5]  This is actually the crux of the Defendant's argument.  The Government tries to bring an element of "horror" into the equation (see sentencing memo at page 2) but in actuality, the same element of "horror" exists in every arson.  In spite of that common denominator amongst arsonists, the Government has not distinguished these four arsons from any other crime involving fire – thus leaving the Court at a loss to fairly and uniformly apply sentencing factors to this Defendant, when considering how Congress uniformly applies sentencing guidelines to these offenders.

**Although All the Arsons Committed By the Defendant Involve a Risk of Harm to Public Safety, The Government Must Concede That the Majority of the Arsons In This Case Involve No Tangible Intent To Cause Physical Harm To Anyone, and the Guidelines Have <u>Already Accounted For the Lone Arson Which Did Cause Harm</u>**

Under 18 U.S.C. § 844(I) and USSG §2K1.1 the crime of arson is characterized as a crime against property, which affects public safety.  Out of the four fires that were admitted by the Defendant, three of them involve businesses, where it appears that the sole intention was to cause property damage.  **This fact is not in dispute**.  The Government, in its sentencing memorandum, characterized the Defendant's conduct as motivated by "revenge" over disputes which were business in nature (see Government's sentencing memo at pages 3-4).  The fires were set in the middle of the night, when the businesses were closed, and thus one could only infer that the motivation for the fires was not to harm, but to anger.[6]  There was only one fire out of the four which appears that the intention could have been otherwise.   Upon review of this assessment, what is important to note is that the sentencing guidelines have already and specifically taken the Defendant's aggravating intention on this last fire into account, by assessing an additional two year minimum mandatory sentence, above and beyond what the Defendant would normally receive had his intention been for mere property damage like the other three fires.

**<u>A Restitution Order Serves The Loss of Property</u>**

Relying upon the information above, the point that the Defendant makes here is that the majority of the Defendant's crimes were property crimes and the restitution sought by the Government addresses the financial loss which derives from said crimes.  The Defendant submits that the financial loss does not also serve to double a Defendants' sentence from where it should normally be assessed.

---

[6]  This of course does not minimize the Defendant's conduct, but surely does not serve to aggravate it either.

6

## What is Left to Consider

After seeing upon review of the 24 pages of the Government's sentencing memorandum, and after seeing that they have not provided this Court with one tangible factor that should separate the Defendant's conduct from any other person charged with the same crimes, the only thing left to consider are the six alleged fires that the Defendant have not been charged with, nor *relevant* to the statutory maximum, the statutory minimum, or the sentencing guidelines.  As an initial matter, the Defendant has previously ***objected and presently objects (seeking an evidentiary hearing should the Court seek to rely upon the uncharged irrelevant conduct to enhance the Defendant's sentence)*** that the Government has proven any of these allegations by a preponderance of the evidence and holds the Government to its proof.  Secondly, the Government had every opportunity to charge the Defendant with these crimes but never did – presumably because the evidence against the Defendant is weak, if not non-existant.[7]   As a consequence, they should not be able to not rely upon this irrelevant and woefully weak conduct to justify doubling the Defendant's sentence.

## Conclusion

In conclusion, the Defendant respectfully asks that he be sentenced ***at or around*** the minimum-mandatory range, which is 84 months.  Should the Court find any aggravating factors that would warrant an upward departure above the 84 months, the Defendant prays that the Court first consider that the minimum mandatory sentence in this case has increased the Defendant's ***otherwise applicable*** guideline range by over 20 months, and then also take into account that the Government has not provided any evidence beyond the general nature of arson itself to warrant any additional and significant upward departure.

---

[7]   The Defendant submits that if they did charge the Defendant with this conduct, and even with an admission of guilt, the Defendant submits that he would receive one more base level point, which would (in light of the lack of criminal record he has) bring his base offense level to the point of 87 months – a hair above the minimum mandatory sentence.

JOSE BAEZ
By his Attorney,


/s/Gordon W. Spencer
Gordon W. Spencer, Esq.
945 Concord Street
Framingham, MA 01701
BBO #630488
(508) 231-4822

Dated:  November 26, 2012


**CERTIFICATE OF SERVICE**

I, the undersigned hereby certify that I have served a copy of the Defendant's Sentencing Memorandum, and upon all counsel and probation officers of record, via electronic transmission this 26th of November, 2012


/s/Gordon W. Spencer